UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RAPHAEL DRIVER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:20-cv-00141-SEB-TAB |
| | ) |
| MARK SEVIER, et al. | ) |
| | ) |
| Respondents. | ) |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

Raphael Driver, a former inmate of the Indiana Department of Correction ("IDOC"), has filed a petition for a writ of habeas corpus challenging a prison disciplinary conviction in case number NCF 19-09-0062.[1] For the reasons explained below, the petition is **DENIED**.

**I.
LEGAL STANDARD**

Prisoners in Indiana custody may not be deprived of good-time credits or credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt.

---

[1] According to IDOC's online records, Mr. Driver was discharged to parole on April 13, 2021. *See* https://www.in.gov/apps/indcorrection/ofs/ofs?lname=driver&fname=raphael&search1.x=0&search1.y=0. A habeas petition challenging a prison disciplinary conviction may become moot when the inmate is discharged to parole, but this is a fact-sensitive inquiry. *White v. Ind. Parole Bd.*, 266 F.3d 759, 763 (7th Cir. 2001). The respondent has not moved to dismiss the action as moot. In the interest of judicial economy, the Court will review and dismiss the habeas petition on the merits, rather than issue an Order directing Mr. Driver to show cause or an order directing the respondent to provide information on Mr. Driver's parole status.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## II.
## BACKGROUND

On September 6, 2019, IDOC Officer Ryne Drake wrote a Report of Conduct charging Mr. Driver with assault on staff with injury, a violation of IDOC Adult Disciplinary Code A-102. Dkt. 14-1. The Report of Conduct states:

> On the above date and approximate time I, Officer Ryne Drake, responded to a signal 10 in F-unit. I entered F3 with CM Jackson. As CM Jackson and I approached offender Driver, Raphael #988808 struck me with closed fist punches to the face. He also struck me with his elbow. CM Jackson and I attempted to restrain offender Driver while we were doing this, Offender driver struck CM Jackson several times in the head with closed fists. Offender Driver was advised he would be receiving a conduct report.

*Id.* On September 9, 2019, the Report of Conduct was amended to say "Behavior is not related to mental health symptoms." *Id.*

On September 6, 2019, IDOC created a document titled "SIR Description" that set forth a more detailed report of the assault on CM Jackson. Dkt. 14-3. The document mentions that Mr. Driver has a psychiatric history and was previously confined to New Castle Correctional Facility to address mental health issues. *Id.* The document further states that Mr. Driver was not adjusting well to living in an open-dormitory setting and that he wished to be transferred to a single cell unit. *Id.* That report states that Mr. Driver's desire to leave the open-dormitory setting was likely the reason for his conduct. *Id.*

On September 9, 2019, Mr. Driver was notified of the charge against him when he was given a copy of the Screening Report. Dkt. 14-4. Mr. Driver asked for Mr. Bunker and CM Easley to provide witness statements in response to the following question: "Did Offender Driver tell you about the issues he was having being in [general population], his [mental health] issues and not

2

sleeping?" *Id.* He asked for MHP Mellander to provide a witness statement in response to the following question: "Did offender Driver come to you [with] his crisis after being up for 7 days?" *Id.* Mr. Driver also asked for emails from CM Bunker and CM Easley to CSO Owens about his mental health issues. *Id.*

Mr. Bunker provided the following written statement in response to Mr. Driver's question: "Yes he advised me of some issues he was having and it was passed on to my Supervisor Lowe same date as well as Dr. Harmon-Nary." Dkt. 14-8, p. 3. Mr. Bunker also provided emails he had sent regarding Mr. Driver's mental health status. *Id.* at 4-6.

CM Easley provided the following written statement in response to Mr. Driver's question:

> Offender Driver came to me for assistance because he stated that he had not slept in several days due to not being able to adjust to the open pod environment. He went on to explain[] that he has some mental health issues and was waiting to see someone from mental health. I called Dr. Harmon-Nary who assured me that he would be seen before the end of the week.
>
> Offender Driver did go to mental health on the morning of the incident. He came back to my office distraught because he believed that his state of mind was not being taken seriously. After talking with him I spoke to Dr. Harmon-Nary who suggested that we try moving the offender to the quiet room in the hope that this would help. I also talked to UTM Lowe and case manager Bunker about offender Driver. Unfortunately, no actions could be taken before offender Driver had his altercation with staff.

Dkt. 14-8, p. 1. CM Easley stated that she did not send any emails relating to Mr. Driver's mental health status.

MHP Mellander provided the following written statement to Mr. Driver's question: "Offender submitted [health care request] to mental health and was seen 9-7-19. He was offered services but declined. Offender reported sleep concerns but declined [mental health] services when offered." Dkt. 14-9.

On September 12, 2019, this matter proceeded to a disciplinary hearing. Dkt. 14-6. The hearing officer consulted with mental health staff before reaching a decision. *Id.* Mr. Driver told the hearing officer "I went to everybody, I told Freeman to lock me up. I was up 7 days. I could not control myself." *Id.* The hearing officer considered Mr. Driver's statement, the Report of Conduct, the SIR Description, witness statements, emails, video evidence, and pictures and found Mr. Driver guilty. *Id.* Mr. Driver received a loss of 112 days earned-credit time and a one-step demotion in credit-earning class. *Id.* The maximum sanction for a Class A offense, such as the offense Mr. Driver was found guilty of committing, is a 6-month loss of earned credit time and a one-step demotion in credit-earning class. Dkt. 14-13, p. 38.

Mr. Driver appealed his disciplinary conviction to the Facility Head and the IDOC Final Reviewing Authority. Dkts. 14-10, 14-11. These appeals were denied. *Id.* Mr. Driver then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## III.
## DISCUSSION

Mr. Driver raises the following grounds for relief in his habeas petition: (1) The hearing officer did not consider his defense that his conduct was the result of "an established mental health issue." (2) He was denied the opportunity to present evidence of his mental health condition at the disciplinary hearing. (3) His sanctions were impermissibly harsh in light of his mental health status. Dkt. 8, pp. 3–5.

### A. Failure to Consider Mental Health Status

Mr. Driver argues that the disciplinary hearing officer violated his right to due process by failing to consider his chronic mental health status before finding him guilty at the disciplinary hearing. Dkt. 8 at pp. 3–4. More specifically, he asserts that his mental illness precludes a finding that his actions were knowing or intentional as required by Code 102. *Id.*

4

As a factual matter, Mr. Driver's argument that the hearing officer did not *consider* his mental health condition is belied by the record. The disciplinary hearing officer consulted with the mental health staff before finding Mr. Driver guilty. Dkt. 14-6. The hearing officer also considered multiple staff reports, witness statements, and emails that described Mr. Driver's mental health status. *Id.* Finally, the hearing officer considered Mr. Driver's statement at the hearing that he was unable to control his actions due to his chronic mental health conditions.

As a legal matter, Mr. Driver more accurately argues that the hearing officer deprived him of due process by refusing to *accept* his mental health argument. Due process did not require the hearing officer to accept any particular argument. Rather, due process entitled Mr. Driver to present his mental health argument and required the hearing officer to render a decision supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985).

"[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added). *See also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

5

The hearing officer's decision enjoys support from considerable evidence. There is no dispute that Mr. Driver struck Officer Drake and CM Jackson. There also is no dispute that Mr. Driver had an ongoing mental health condition. No evidence beyond Mr. Driver's own statement, however, indicates that he was incapable of acting with knowledge or intent. The hearing officer could have accepted Mr. Driver's explanation, but other evidence allowed the hearing officer to find him guilty. The decision satisfied due process. Mr. Driver asks the Court to consider the same evidence and arguments reach a different conclusion. This is a request to reweigh the evidence, and the Court may not do so. *Rhoiney*, 723 F. App'x at 348.

### B.  Denial of Right to Present Mental Health Evidence

The respondent argues that Mr. Driver did not exhaust his claim that he was denied the right to present evidence because he failed to raise this claim in his administrative appeals. Dkt. 14, pp. 8-10. Generally, Indiana prisoners challenging their disciplinary convictions may only raise issues in a petition for a writ of habeas corpus that were previously raised in a timely appeal to the Facility Head and then to the IDOC Final Reviewing Authority. *See* 28 U.S.C. § 2254(b)(1)(A); *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002); *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002).

In his appeal to the Facility Head, Mr. Driver did not argue that he was denied the right to present evidence. Instead, he merely argued that the disciplinary hearing officer failed to consider evidence of his chronic mental health status and that the disciplinary hearing officer imposed impermissibly harsh sanctions in light of his mental health status. Dkt. 14-10, p. 2. Additionally, Mr. Driver did not file a reply, and he therefore has not rebutted the respondent's contention that he failed to exhaust this argument. Finally, the time to present this issue in a disciplinary appeal

has passed. Dkt. 14-13, p. 52. Accordingly, Mr. Driver has procedurally defaulted his denial-of-evidence argument and may not obtain relief on it.

### C. Impermissibly Harsh Sanction

Mr. Driver argues that his disciplinary sanctions were impermissibly harsh in light of his mental health status. "[A] federal court will not normally review a state sentencing determination which, as here, falls within the statutory limit," unless the sentence violates the Eighth Amendment by being an "extreme" punishment that is "grossly disproportionate" to the crime. *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997). Mr. Driver received a loss of 112 days earned-credit time and a one-step demotion in credit-earning class. Dkt. 14-6. This was significantly below the maximum sanction of a six-month loss of earned-credit time and a one-step demotion in credit-earning class. Dkt. 14-13, p. 38. Mr. Driver's sanction does not meet the high bar of violating the Eighth Amendment.

## IV.
## CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Driver to the relief he seeks. Accordingly, Mr. Driver's petition for a writ of habeas corpus must be **DENIED** and the action **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

Date:  4/27/2021

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

RAPHAEL DRIVER
Relax Inn Motel
50520 IN – 433
South Bend, IN 46637

Abigail Recker
INDIANA ATTORNEY GENERAL
abigail.recker@atg.in.gov